IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:26-cv-22906

STEPHEN M. CODY,

     *Plaintiff*,

v.

VILLAGE OF PALMETTO BAY,

     *Defendant*.

_____/

## COMPLAINT

1. After political activist Charlie Kirk's killing in September 2025, many individuals posted visceral reactions to social media that covered a wide range of perspectives and beliefs. Many social media users encountered speech they found despicable, no matter where they fell on the political spectrum. That is the nature of a democracy where free speech is protected. And just as political violence has no place in a just society, the unbridled trampling of constitutional protections has no place either.

2. One of the outcomes of the tragedy of Mr. Kirk's death has been a tremendously increased fervor for censorship. Indeed, government actors at all levels have called for Americans to lose their jobs and leadership positions because they exercised their right to freely express controversial political views—a right Mr. Kirk himself exercised and encouraged for others. Yet the basic freedom to comment on public issues of the day, and to debate and even condemn the political views of others, is fundamental to our democracy. It is that basic freedom that the Village of Palmetto Bay has denied Plaintiff Stephen M. Cody.

3. The First Amendment requires that elected officials "be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). The Supreme Court recently reaffirmed that principle, explaining that "the First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).

4. Plaintiff brings this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief and damages for the Village's violation of his First Amendment rights.

1

## I.  PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff Stephen M. Cody is an elected member of the Palmetto Bay Village Council. He was first elected in 2020 and was reelected in 2024 to a second four-year term.

6.      Defendant Village of Palmetto Bay is a Florida municipality. It is governed by a five-member Village Council consisting of the Mayor, Vice-Mayor, and three Council members.

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides here and a substantial part of the events giving raise to the claim occurred here.

## II.  FACTUAL ALLEGATIONS

### A.  Plaintiff's Service as Education Advisory Committee Liaison and on Other Boards

9.      The Village Council has established several community advisory committees and boards to engage residents and stakeholders, receive input on various Village objectives, and give the Village Council recommendations regarding public policies and programs.

10.      One such committee is the Education Advisory Committee (EAC). The EAC reviews and supports the terms of the Education Compact between the Village and Miami-Dade County Public Schools,[1] confers certain awards, engages in other activities in support of education, and serves as a forum for Village residents to discuss education issues.

11.      Pursuant to Code of Ordinances § 2-57(b), the Village Council appoints a non-voting Council liaison to each advisory committee. As the ordinance provides, the liaison's duties are (a) being the intermediary between the Council and committee, (b) regularly attending their assigned committee to strengthen the Council-committee relationship, and (c) ensuring the committee has the information it needs to function.

12.      The Village Council unanimously appointed Plaintiff as Council liaison to the EAC on January 13, 2025.

13.      During his tenure as EAC liaison, Plaintiff fulfilled all the duties required by ordinance.

---

[1]    The Education Compact is an agreement between the Village and Miami-Dade County Public Schools made in 2013 as a collaborative effort to enhance education experiences, increase learning opportunities, and utilize both governments' collective resources to the greater benefit of the students and citizens of the Village.

14.     Prior to the Council resolutions at issue in this case, the Council or Mayor appointed Plaintiff as the Council's or Village's representative on several other boards, committees, or external bodies (together with the EAC liaison position referred to as the "Representative Positions").

15.     Namely, the Council appointed Plaintiff as the Council liaison to the Village's Art in Public Places Advisory Board on January 13, 2025; the Mayor appointed Plaintiff as the non-voting Council member on the Village's Charter Review Commission on March 3, 2025; and the Mayor appointed Plaintiff as the Village's representative to the Miami-Dade County League of Cities, an external body, in November 2024.

**B. Plaintiff's Protected Speech**

16.     Before and during his tenure as councilmember, Plaintiff has stated his positions and views on various matters of public importance.

17.     One way in which Plaintiff communicates his views is his personal social media account on Facebook, which is accessible to accounts who "follow" him and to non-followers.

18.     Plaintiff uses his Facebook account for a variety of purposes, including to comment on matters of public concern, often in a wry and satirical manner.

19.     On September 10, 2025—the day Charlie Kirk was killed—Plaintiff posted commentary on his personal Facebook account addressing issues of gun violence and public discourse, including a quotation attributed to Mr. Kirk.

20.     Plaintiff's post included the following quotation from Mr. Kirk: "I think it's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second Amendment to protect our other God-given rights."

21.     Along with Mr. Kirk's quotation, Plaintiff wrote in his post: "Charlie Kirk is a fitting sacrifice to our Lords: Smith & Wesson. Hallowed be their names."

22.     Plaintiff's post references Mr. Kirk's shooting death and his past controversial remarks on school shootings. Mr. Kirk was a prominent conservative activist who was known for sharing his often-controversial viewpoints through podcasts and debates on college campuses. Among the views he espoused was the quotation Plaintiff shared and that school shootings could best be addressed by having more armed guards at schools and more fathers in homes.[2]

---

[2]   Nick Mordowanec, *Charlie Kirk Says Gun Deaths 'Unfortunately' Worth it to Keep 2nd Amendment*, Newsweek (Apr. 6, 2023), https://www.newsweek.com/charlie-kirk-says-gun-

23.     Plaintiff's social-media commentary was political speech on matters of public concern.

24.     Plaintiff intended his post to convey a particularized political message that is apparent from the text itself. That political message incorporates the following ideas:

    a.   Mr. Kirk's ideology included supporting gun rights even at the expense of those like children in their classrooms.

    b.   A religious devotion to gun rights erodes the reverence for human life that we should all share.

    c.   The glorification of guns and gun rights is harmful and encourages gun violence and death.

    d.   Such devotion to and glorification of gun rights and guns at the expense of human life is worthy of scorn.

    e.   It is ironic that Mr. Kirk should die from gun violence since he believed that gun violence deaths were a "cost" "worth" paying to protect gun rights.

25.     Plaintiff's political statement does not condone Mr. Kirk's killing, nor does it call for further violence.

26.     Mr. Kirk was a public figure widely known for his controversial political views, and his death is a matter of public concern. At the time Plaintiff posted his message, Mr. Kirk's killing was **the** topic of discussion across the nation. The President and much of his cabinet attended Mr. Kirk's memorial, along with some 90,000 of his followers.[3] Mr. Kirk's legacy remains a point of contention among politicians and citizens in Florida and everywhere else in the country.

27.     Political speech on matters of public concern lies at First Amendment's core.

28.     Plaintiff's post was not related to his official duties as EAC liaison or the other Representative Positions.

### C.  The Village's Initial Censure

29.     Plaintiff's post prompted vigorous debate, including condemnation by prominent political figures. For example, Florida Attorney General James Uthmeier called on Plaintiff to

---

deaths-worth-it-2nd-amendment-1793113.

[3]     Amanda Macias, *Charlie Kirk Honored by 90K in One of the Largest Memorials for a Private Citizen*, Fox News (Sep. 21, 2025), https://www.foxnews.com/politics/charlie-kirk-honored-90k-one-largest-memorials-private-citizen.

resign from the Council. Congressmen Carlos Gimenez and Randy Fine requested Governor DeSantis suspend Plaintiff from office.

30.     Palmetto Bay Mayor Karyn Cunningham also called for Plaintiff to resign, commenting: "We need to make sure that the folks that are making policy are also supportive of community values."[4]

31.     Vice Mayor Mark Merwitzer also demanded Plaintiff resign, asserting that "[t]he values that make Palmetto Bay special are at stake." Councilmember Marsha Marton did the same, stating that Plaintiff's "recent comment – about Charlie Kirk" "mocked sacred values."

32.     On September 15, 2025, the Village Council adopted Resolution 2025-46 (attached as **Exhibit A**), formally censuring Plaintiff and requesting his resignation based expressly on the content of his Facebook post.

33.     Resolution 2025-46 acknowledged that Plaintiff's speech was protected by the First Amendment, stating: "Councilmember Steve Cody's statements are protected under the First Amendment[.]"

34.     Resolution 2025-46 nevertheless expressed formal disapproval of Plaintiff's post and requested an investigation by the governor.

35.     Plaintiff does not challenge the Village's authority to express disapproval or to adopt a purely verbal censure. Plaintiff challenges only the Village's subsequent escalation (described immediately below) from censure to tangible punishment—including removing Plaintiff from an official governmental role—imposed solely because of his protected speech.

**D. The Village's Escalation to Retaliatory Punishment**

36.     On November 17, 2025, the Village Council adopted Resolution 2025-68 (attached as **Exhibit B**).

37.     Resolution 2025-68 expressly incorporated Resolution 2025-46 and stated that, following the censure, the Council found it "necessary and appropriate to take additional administrative actions[.]"

38.     Resolution 2025-68 implemented several retaliatory punishments in response to Plaintiffs' protected speech.

---

[4]   Niko Clemmons, *Palmetto Bay Councilman Facing Calls to Resign Over Post Calling Charlie Kirk's Death 'Fitting Sacrifice'*, NBC6 Miami (Sep. 11, 2025), https://www.nbcmiami.com/news/local/palmetto-bay-councilman-charlie-kirk-post-backlash/3690126/.

39.     Resolution 2025-68 removed Plaintiff as Council liaison to the EAC.

40.     Plaintiff's removal as EAC liaison was a tangible adverse action, depriving him of an official governmental position that he previously held and depriving him of the ability to perform his duties as EAC liaison, as he had since his appointment.

41.     Resolution 2025-68 also carried out several other punishments:

   a. The Council "expressly disavow[ed] Plaintiff's authority to speak or act on behalf of the Council in connection with" "all external boards, committees, task forces, authorities or similar bodies to which he has been designated as representing the Village[.]"

   b. The Council requested "that the Mayor refrain from appointing [Plaintiff] as the Village's representative to any external board, committee, task force, authority, or similar body for which the Mayor possesses appointment authority."

   c. The Council rescinded Plaintiff's existing appointments as the Village's representative to such external entities.

   d. The Council requested Plaintiff "be prohibited from issuing, presenting, sponsoring, or otherwise leading in the presentation of any award, proclamation, commendation, certificate, honoraria, or other ceremonial recognition on behalf of the Village of Palmetto Bay, whether at Village-hosted events or external events."

42.     Resolution 2025-68 was adopted because of Plaintiff's protected speech.

### E.  Chilling Effect and Ongoing Harm

43.     The retaliatory acts carried out and directed by Resolution 2025-68 were intended to punish Plaintiff for his political speech and to deter him and other elected officials from engaging in similar expression.

44.     Indeed, those retaliatory acts "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

45.     The Village's actions have caused ongoing constitutional injury, including the chilling of Plaintiffs' protected speech now and in the future, and the impairment of his ability to perform official duties free from retaliation.

46.     As a direct result of the Village's retaliatory conduct, Plaintiff has suffered other harm, including loss of standing and effectiveness as an elected official and damage to professional

reputation.

47.     The Village's actions harm not only Plaintiff, but the democratic process itself. Retaliating against an elected councilmember for protected political speech chills dissent, suppresses minority viewpoints within the legislative body, and interferes with the electorate's right to representation by the official of its choosing, free from unconstitutional punishment.

48.     The Village's retaliatory motive for Resolution 2025-68 appears on the face of the document itself. By expressly incorporating Resolution 2025-46 and announcing "additional administrative actions" are being taken because of the earlier censure, the Village Council admitted that Plaintiff's protected speech was the direct cause of the punishments it imposed.

49.     That the Village objected to the particular viewpoint expressed in his post is also evident from Mayor Cunningham's comment about needing policymakers who are "supportive of community values," Vice Mayor Merwitzer's comment that "[t]he values that make Palmetto Bay special are at stake," and Councilmember Marton's condemnation of Plaintiff's post for "mock[ing] sacred values."

## CLAIMS FOR RELIEF

### COUNT ONE
### First Amendment Retaliation
### (42 U.S.C. § 1983)

50.     Plaintiff realleges and incorporates by reference ¶¶ 1–49.

51.     The First Amendment generally "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll.*, 595 U.S. at 474 (quoting *Nieves*, 587 U.S. at 398).

52.     As an elected official, Cody enjoys the "right to speak freely on questions of government policy," *id.* at 478, and "to enter the field of political controversy," *Wood v. Georgia*, 370 U.S. 375, 394 (1962).

53.     Plaintiff's post about Mr. Kirk's death expressed Plaintiff's personal views and opinions on controversial issues that are currently the subject of extensive public debate.

54.     His post is First Amendment-protected speech.

55.     His post did not interfere with any of his official duties as EAC liaison or his other Representative Positions.

56.     The Village of Palmetto Bay, acting through the Village Council, removed Plaintiff

from his position as EAC liaison and adopted the other punishments in Resolution 2025-68 because of the viewpoints and opinions expressed in his post.

57.   The Village's actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254.

58.   The Village's punishments adopted in Resolution 2025-68, including removing Plaintiff as EAC liaison, violated his rights under the First and Fourteenth Amendments.

## COUNT TWO
### First Amendment Content and Viewpoint Discrimination
### (42 U.S.C. § 1983)

59.   Plaintiff realleges and incorporates by reference ¶¶ 1–49.

60.   The First Amendment prohibits government officials from discriminating against speech "based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019).

61.   Viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995).

62.   Plaintiff shared his views and opinions in the at-issue post as a private citizen.

63.   Plaintiff's comments concerning Mr. Kirk's death addressed matters of public concern.

64.   The Village punished Plaintiff because it objected to the content and viewpoint of his political speech.

65.   The Village had no legitimate, content-neutral justification for punishing Plaintiff for his speech.

66.   The Village imposed viewpoint-based restrictions on Plaintiff because of its subjective disapproval of Plaintiff's viewpoints.

67.   Public reaction to speech is never a content-neutral basis for regulation. A heckler's veto is an unconstitutional viewpoint-based limitation on expression.

68.   The First Amendment categorically forbids the Village's content- and viewpoint-based restrictions on Plaintiff, and therefore the Village's actions against him violated his rights under the First and Fourteenth Amendments.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully requests that the Court enter judgment in his favor and:

A.        Declare the punishments adopted in Resolution 2025-68, including Plaintiff's removal from his position as Council liaison to the Education Advisory Committee, to be unconstitutional in violation of the First Amendment;

B.        Enjoin the Village from retaliating against Plaintiff for his posting of the specific political statement at the center of this lawsuit in the exercise of his First Amendment rights, including enjoining the Village from enforcing the punishments adopted in Resolution 2025-68;

C.        Award Plaintiff nominal damages of one dollar;

D.        Award Plaintiff reasonable attorneys' fees and costs; and

E.        Grant any other relief the Court deems just and proper.

Respectfully submitted April 27, 2026,

 /s/ Nicholas L.V. Warren
Nicholas L.V. Warren (FBN 1019018)
Michelle M. Morton (FBN 81975)
Samantha J. Past (FBN 1054519)
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
mmorton@aclufl.org
spast@aclufl.org
cmcnamara@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiff Stephen M. Cody*

9

# <u>Exhibit A</u>

**Resolution 2025-46**
**(Sep. 15, 2025)**

Docusign Envelope ID: EC6C7230-0A15-4495-9886-FC679D3AAA6C

**RESOLUTION NO. 2025-46**

**A RESOLUTION OF THE MAYOR AND VILLAGE COUNCIL OF THE VILLAGE OF PALMETTO BAY, FLORIDA, CENSURING COUNCILMEMBER STEVE CODY AND REQUESTING HIS RESIGNATION FOR HIS FACEBOOK POST OF SEPTEMBER 10, 2025, FOR PUBLIC STATEMENTS INCONSISTENT WITH THE EXPECTATIONS OF OFFICE; AND PROVIDING AN EFFECTIVE DATE.** *(Sponsored by Mayor Karyn Cunningham)*

**WHEREAS,** the Village Council of Palmetto Bay is committed to maintaining a professional, respectful, and ethical standard of conduct for all elected officials; and

**WHEREAS,** Councilmember Steve Cody, by publicly expressing statements condoning and celebrating the death of Charles James Kirk, engaged in conduct that is widely viewed as offensive, inappropriate, and inconsistent with the dignity and responsibilities of the office held; and

**WHEREAS**, while Councilmember Steve Cody's statements are protected under the First Amendment, the Village Council retains authority to formally censure and request the resignation of members for conduct that undermines public trust, community confidence, or the integrity of the office; and

**WHEREAS,** the Village Council finds that such statements are inconsistent with ethical and professional standards expected of elected officials and warrant a formal expression of disapproval by the governing body.

**NOW THEREFORE, BE IT RESOLVED BY THE MAYOR AND VILLAGE COUNCIL OF THE VILLAGE OF PALMETTO BAY, FLORIDA, AS FOLLOWS:**

**Section 1.** The above recitals are incorporated as if set forth in full.

**Section 2.** The Village Council hereby issues the formal censure of Councilmember Steve Cody for his insensitive, tasteless, and heartless post ridiculing and mocking the assassination of another human being,

Docusign Envelope ID EC6C7230-0A15-4495-9886-FC679D3AAA6C

the late Charlies James Kirk, and requests his resignation from the Village Council.

**Section 3.** The Village Council hereby requests an investigation into the conduct of Councilmember Steve Cody that may qualify for suspension of office under Florida Statute 112.51, titled *Municipal Officers; Suspension; Removal from Office by the Governor.*

**Section 4.** The Village shall fully cooperate with any investigation that results from this Resolution.

**Section 5.** This Resolution shall take effect immediately upon passage.

**PASSED** and **ADOPTED** this 15th day of September, 2025.

Signed by

*Missy Arocha*

**Missy Arocha**
**Village Clerk**

Signed by

*Karyn Cunningham*

**Karyn Cunningham**
**Mayor**

**APPROVED AS TO FORM AND LEGAL SUFFICIENCY:**

Signed by

*John C. Dellagloria, Esq.*

**John C. Dellagloria**
**Village Attorney**

**FINAL VOTE AT ADOPTION:**

Council Member Patrick Fiore      <u>YES</u>

Council Member Steve Cody      <u>NO</u>

Council Member Marsha Matson      <u>YES</u>

Vice-Mayor Mark Merwitzer      <u>YES</u>

Mayor Karyn Cunningham      <u>YES</u>

# Exhibit B

**Resolution 2025-68
(Nov. 17, 2025)**

Docusign Envelope ID: F8B6AD40-54BA-404B-A0F1-F4F6CB70B1B4

# RESOLUTION NO. 2025-68

**A RESOLUTION OF THE MAYOR AND VILLAGE COUNCIL OF THE VILLAGE OF PALMETTO BAY, FLORIDA, AMENDING RESOLUTION 2025-04 AT SECTION 5 BY REQUESTING THE COUNCIL TO REMOVE THE COUNCIL LIAISON TO SPECIFIC VILLAGE COMMITTEES; URGING COUNCILMEMBER STEVE CODY TO VOLUNTARILY RESIGN AS THE COUNCIL LIASON TO THE CHARTER REVISION COMMISSION; REQUESTING THE MAYOR TO NOT MAKE CERTAIN APPOINTMENTS TO ANY EXTERNAL BOARD OR COMMITTEE, AND RESCINDING ANY SUCH APPOINTMENTS; PROHIBITING CERTAIN CEREMONIAL PRESENTATIONS, AND PROVIDING FOR SEVERABILITY AND AN EFFECTIVE DATE.**
*(Sponsored by Vice Mayor Mark Merwitzer)*

**WHEREAS,** the Village Council of the Village of Palmetto Bay ("Village") is committed to maintaining public confidence in the integrity and professionalism of Village government and its representatives; and

**WHEREAS,** the Village Council adopted Resolution 2025-46 censuring Councilmember Steve Cody and requesting his resignation, following public statements inconsistent with the expectations of office (the "Censure Resolution"); and

**WHEREAS,** the Council finds it necessary and appropriate to take additional administrative actions to protect the reputation and interests of the Village, to ensure effective and respectful representation on Village boards and committees, and to avoid further disruption to Village business; and

**WHEREAS,** the Council desires to remove Councilmember Steve Cody as liaison to certain Village committees, prohibit the Mayor, where authorized to appoint representatives of the Village, from appointing Councilmember Steve Cody to any such position, rescind any such appointments if already made, and prohibit Councilmember Steve Cody from presenting awards, all to further the public purpose of maintaining orderly and professional representation of the Village.

Docusign Envelope ID: F8B6AD40-54BA-404B-A0F1-F4F6CB70B1B4

**NOW THEREFORE, BE IT RESOLVED BY THE MAYOR AND VILLAGE COUNCIL OF THE VILLAGE OF PALMETTO BAY, FLORIDA, AS FOLLOWS:**

**<u>Section 1.</u>** The above recitals are incorporated as if set forth in full.

**<u>Section 2.</u>** Resolution No. 2025-04 is hereby amended as follows:

Section 5. The Village Council appoints the following Council members to serve as the Council Liaison to their respective advisory board and or Committee:

a. Education Advisory Committee Council Liaison ~~Councilmember Steve Cody~~ <u>Mayor Karyn Cunningham</u>

All other provisions of Resolution No. 2025-04 remain in full force and effect.

**<u>Section 3.</u>** (a) The Council hereby urges Councilmember Steve Cody to voluntarily resign from all external boards, committees, task forces, authorities, or similar bodies to which he has been designated as representing the Village, and expressly disavows his authority to speak or act on behalf of the Council in connection with such entities.

(b) To the extent permitted by the Village Charter, Village Code, interlocal agreements, and applicable law, the Council further requests that the Mayor refrain from appointing Councilmember Steve Cody as the Village's representative to any external board, committee, task force, authority, or similar body for which the Mayor possesses appointment authority.

(c) Any existing appointment of Councilmember Steve Cody as the Village's representative to such external entities is hereby rescinded and shall be of no further force or effect as of the effective date of this Resolution. The Village Clerk shall provide immediate written notice of such rescission to each affected body and, where applicable, to the corresponding host jurisdiction or agency.

Docusign Envelope ID: F8B6AD40-54BA-404B-A0F1-F4F6CB70B1B4

(d) If Councilmember Steve Cody continues to serve in any such representative capacity more than five (5) days after the effective date of this Resolution, the Village Clerk is directed to transmit copies of this Resolution and Resolution 2025-46 to the affected body and, where applicable, the host jurisdiction, for their records and acknowledgment.

**Section 4.** Effective upon adoption, the Village Council requests and urges Councilmember Steve Cody to be prohibited from issuing, presenting, sponsoring, or otherwise leading in the presentation of any award, proclamation, commendation, certificate, honoraria, or other ceremonial recognition on behalf of the Village of Palmetto Bay, whether at Village-hosted events or external events.

**Section 5.** All resolutions or parts of resolutions in conflict herewith are repealed to the extent of such conflict. If any section, subsection, sentence, clause, or phrase of this Resolution is held invalid, the remainder shall continue in full force and effect.

**Section 6.** This Resolution shall take effect immediately upon passage.

**PASSED** and **ADOPTED** this 17th day of November, 2025.

Attest:

*Missy Arocha* _____
6EDC211E5E8C48C...
**Missy Arocha**
**Village Clerk**

*Karyn Cunningham* _____
35B93CD2D0CB470...
**Karyn Cunningham**
**Mayor**

**APPROVED AS TO FORM AND LEGAL SUFFICIENCY FOR THE SOLE USE AND BENEFIT OF THE VILLAGE OF PALMETTO BAY:**

_____
C71CE56E4F6849D...
**John Quick, Esq.**
**Village Attorney**

Docusign Envelope ID: F8B6AD40-54BA-404B-A0F1-F4F6CB70B1B4

**FINAL VOTE AT ADOPTION:**

Council Member Patrick Fiore          <u>YES</u>

Council Member Steve Cody          <u>NO</u>

Council Member Marsha Matson          <u>YES</u>

Vice-Mayor Mark Merwitzer          <u>YES</u>

Mayor Karyn Cunningham          <u>YES</u>