**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-22906-ALTONAGA

STEPHEN M. CODY,

     *Plaintiff*,

v.

VILLAGE OF PALMETTO BAY,

     *Defendant*.

                       /

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff Stephen M. Cody is an elected Palmetto Bay councilmember whose protected speech on a matter of public concern need not yield to the political preferences of his fellow councilmembers. Plaintiff has plausibly alleged a justiciable violation of his First Amendment rights and seeks remedies that this Court can provide. In its Motion to Dismiss (Dkt. No. 12), the Village of Palmetto Bay defends its actions with arguments that fail when the allegations in the Complaint are read in the light most favorable to Plaintiff, as they must be at this stage of the case, and the correct law is applied. And there is no need for the Court to take judicial notice of news articles or any other potential evidence that may be developed later in discovery. For these reasons, the Motion should be denied.

**FACTUAL ALLEGATIONS**

On the day Charlie Kirk was killed, September 10, 2025, Plaintiff posted commentary on his personal Facebook account addressing issues of gun violence and public discourse, including a quotation attributed to Mr. Kirk. Compl. (Dkt. No. 1) ¶ 19. The Village initially censured him "for his insensitive, tasteless, and heartless post ridiculing and mocking the assassination of another human being". *Id.* ¶¶ 32–34, Ex. A at 1:38–39. While Plaintiff recognizes that the Village is free to verbally censure him to express disapproval of his political expression, *id.* ¶ 35, Plaintiff challenges the Village's further retaliatory and viewpoint-discriminatory punishments, *id.* ¶¶ 36–42, Ex. B (the "Challenged Actions"). These punishments include removal from a committee role, prospective removal and exclusion from serving as the Village Council's representative to external entities, and a prohibition on presenting any type of award or proclamation on the Village's behalf. *Id.* ¶ 41, Ex. B at 2–3.

The Village took the Challenged Actions based on, and continues to justify its actions as

proper responses to, Plaintiff's protected speech. *Id.* ¶¶ 36–49; Motion at 4–13. Plaintiff suffers ongoing constitutional harm and seeks remedies through declaratory and injunctive relief, as well as nominal damages. Compl. at 6–9.

## ARGUMENT

**I.      Councilmember Cody alleges plausible claims of First Amendment retaliation and viewpoint discrimination.**

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the complaint's factual allegations must be accepted as true. *Id*. To survive a motion to dismiss for lack of standing, a plaintiff must allege injury in fact traceable to the defendant's actions that can be remedied through the requested relief. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff has done so here, and the Motion must therefore be denied.

The First Amendment requires that elected officials "be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966) (ruling that legislature's refusal to seat member-elect for criticizing the Vietnam War violated the First Amendment). The Supreme Court recently reaffirmed that principle, explaining that "the First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Republican Party of Minn. v. White*, 536 U.S. 765, 781–82 (2002) (quoting *Wood v. Georgia*, 370 U.S. 375, 395 (1962)).

Plaintiff plausibly alleges the Village unconstitutionally retaliated against him based on his protected speech and the Village's disapproval of the viewpoints he expressed, through official acts punishing Plaintiff by stripping him of committee appointments and other representative roles.[1] Plaintiff also plausibly alleges that the Challenged Actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005); Compl. ¶ 44. Those allegations support all three elements of his

---

[1] Plaintiff's two claims for relief—retaliation and viewpoint discrimination—are alternative theories of the same constitutional harm.

retaliation claim: protected speech, adverse action, and a causal connection between the two. *See Bennett*, 423 F.3d at 1250. Combined with Plaintiff's allegation that the Challenged Actions were taken due to his viewpoint, Compl. ¶¶ 62-68, these allegations also support the elements of his viewpoint discrimination claim. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional . . ."); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."); *Honeyfund.com Inc. v. Gov. of Fla.*, 94 F.4th 1272, 1277 (11th Cir. 2024) (explaining that "penaliz[ing] certain viewpoints" is "the greatest First Amendment sin").

### A. *Pickering* and other public-employment cases do not apply to this case.

Defendant does not dispute that Plaintiff's speech was protected or that it took the Challenged Actions because it disapproved of that speech. Instead, it relies on caselaw related to public employee speech to argue that the Village's interests outweigh Plaintiff's free speech interests and that the Challenged Acts do not amount to "adverse employment actions." Motion at 2–3, 5–15. But this is not a public employee case. The Village did not hire Plaintiff to perform duties at its direction; his constituents elected him to represent them on the Council.

The balancing framework established by *Pickering v. Board of Education*, 391 U.S. 563 (1968) and developed further in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), does not apply to elected officials like Councilmember Cody. *Warren v. DeSantis*, 631 F. Supp. 3d 1188, 1196–97 (N.D. Fla. 2022) (holding that *Pickering* and *Garcetti* "simply does not apply to" elected officials, who "are beholden to their constituents, not to some other elected official"). This makes sense, since *Pickering* and its progeny are about balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, *as an employer*, in promoting the efficiency of the public services it performs *through its employees*." 391 U.S. at 568 (emphasis added).

The Eleventh Circuit recently expressed "doubt that *Pickering* applies to elected government officials". *Warren v. DeSantis*, 90 F.4th 1115, 1133 (11th Cir. 2024), *vacated as moot and superseded*, 125 F.4th 1361 (11th Cir. 2025). This doubt reflects the weight of circuit authority rejecting the application of *Pickering* balancing when an elected official is retaliated against by their colleagues. *See Boquist v. Courtney*, 32 F.4th 764, 779–80 (9th Cir. 2022) (*Pickering* does not apply to elected officials); *Phelan v. Laramie Cnty. Comm. Coll. Bd. of Trs.*, 235 F.3d 1243,

1247 (10th Cir. 2000) (same); *Rangra v. Brown*, 566 F.3d 515, 526 (5th Cir.) (finding that *Pickering* does not govern a First Amendment claim by an elected official), *vacated as moot*, 584 F.3d 206 (5th Cir. 2009); *Jenevein v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007) (declining to apply *Pickering* and instead applying strict scrutiny to censure of an elected judge); *Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, 816 F. App'x 670, 674 (3d Cir. 2020) (applying the "ordinary firmness" standard in lieu of *Pickering* in a First Amendment retaliation claim by an elected official); *see also Harris v. Quinn*, 573 U.S. 616, 652 (2014) (holding that when "the State is not acting in a traditional employer role," "the *Pickering* test is inapplicable").

Most of the cases the Village cites are therefore entirely inapplicable. Cases like *Biro v. City of Tallahassee*, No. 24-10594, 2025 WL 1068229 (11th Cir. Apr. 9, 2025), and *McKinley v. Kaplan*, 262 F.3d 1146 (11th Cir. 2001), applied *Pickering* balancing to retaliation against unpaid public advisory board members, but none of the plaintiffs in those cases were elected officials. Plaintiff here is not just an elected official; the committee positions and other roles and powers the Village revoked were functions of his elected position. Compl. ¶¶ 11, 15.

The sensitivities around punishing elected officials for political speech are evident in *Houston Community College System v. Wilson*. In *Wilson*, an elected community college system trustee was verbally censured by his fellow board members for political speech. 595 U.S. at 474. Ruling that a purely verbal censure does *not* support a viable First Amendment claim, the Court explained that "[t]he First Amendment surely promises an elected representative like Mr. Wilson the right to speak freely on questions of government policy," but emphasized that "the only adverse action at issue before us is itself a form of speech." *Id.* at 478. A verbal censure "did not prevent Mr. Wilson from doing his job," and "it did not deny him any privilege of office". *Id.* at 479. The Court stressed that its decision did not address "questions concerning legislative censures accompanied by punishments". *Id.* at 480; *see also id.* at 482 ("Our case . . . does not involve expulsion, exclusion, or any other form of punishment.").

Here, Plaintiff's interests in speaking freely on matters of public concern are just as weighty as Mr. Wilson's, but his censure *was* accompanied by other forms of punishment, was *not* just a form of speech, *did* prevent him from doing his job, and *did* deny him privileges of office. That sets this case apart from both *Wilson* and the public-employee cases the Village cites.

**B.  *Pickering* or similar balancing does not justify dismissal at this stage.**

Even if *Pickering* did apply to this case, the Motion must be denied as it is not clear that

4

Defendant's interests outweigh Plaintiff's. When faced with a public employee retaliation claim, courts ask whether the employee spoke as a citizen on a matter of public concern, whether that speech was a motivating factor in the adverse employment action, and whether the employee's free speech interests outweighed the public employer's interest in effective and efficient fulfillment of its responsibilities. *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1051 (11th Cir. 2022). If each of these is satisfied, the employer must show that it would have made the same decision absent the speech. *Id.*

Here, Plaintiff spoke as a citizen on a matter of public concern. Speech critical of "public figures" who "shape events in areas of concern to society at large" is a natural part of the "robust political debate encouraged by the First Amendment." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 51 (1988) (quotation omitted); *see also Rankin v. McPherson*, 483 U.S. 378, 387 (1987) (finding a comment that "if they go for him again, I hope they get him" in response to an attempted presidential assassination was a statement on a matter of public concern). Plaintiff's speech also motivated the Challenged Actions. Motion at 5; Compl. Ex. B.

If *Pickering* applied, this case would thus turn on a balancing of Plaintiff's free speech rights and Defendant's interest in effective and efficient fulfillment of its duties. Plaintiff engaged in political speech, which enjoys the highest level of constitutional protection. *Meyer v. Grant*, 486 U.S. 414, 420–21 (1988). Against this, there is no meaningful disruption of Defendant's ability to fulfill its duties. This is evidenced by the fact that Defendant waited two months to punish Plaintiff after the meeting where "dozens of residents" shared their views of his expressed opinion and where the Council adopted its censure in response. Motion at 7–8; Compl. Ex. B. After that initial blowback and verbal censure but before the Council adopted the Challenged Actions, the Council held at least three meetings at which it passed ordinances, debated policy, took public comment on a variety of subjects, and otherwise conducted public business as usual.[2] There is no reason to expect that Plaintiff's or Defendant's ability to perform their duties would be disrupted by Plaintiff's speech; they plainly continued to perform those duties for months.

And unlike, say, displaying an "Abolish Police" sticker at meetings of a police review board whose purpose was to be unbiased and foster trust with the police, *Biro*, 2025 WL 1068229, at *4–5, Plaintiff's personal views regarding a political activist bear no relation to his

---

[2] Videos of these meetings are available at https://www.palmettobay-fl.gov/1419/Meeting-Central-Agendas-Minutes-Videos.

responsibilities as Education Advisory Committee liaison or the other positions the Council revoked. That councilmembers and some residents took issue with Plaintiff's comments does not rise to the level of disruption necessary to justify violating his right to speak. *See Oakes Farms Food & Distrib. Servs., LLC v. Adkins*, 154 F.4th 1338, 1348 (11th Cir. 2025) ("This kind of heckler's veto concern is not enough to survive First Amendment scrutiny.").

Even if *Pickering* applied, the weighing of competing interests *Pickering* requires is a fact-bound analysis inappropriate at this case's early stage. *Brown v. Young*, 812 F. Supp. 3d 1217, 1222–23 (N.D. Fla. 2025) (denying motion to dismiss state employee's retaliation claims based on *Pickering* balancing because "that is a determination best left for summary judgment" and would "turn[] the standard for motions to dismiss on its head");[3] *Grainger v. Worley*, No. 2:04-cv-41, 2005 WL 8175765, at \*10 (M.D. Ala. Jan. 7, 2005) ("[S]everal courts have discussed the difficulties in successfully applying *Pickering* at the motion to dismiss stage, recognizing that often the *Pickering* balancing is only possibly at the summary judgment stage after some discovery has been conducted.") (citing *Delgado v. Jones*, 282 F.3d 511, 518 (7th Cir. 2002), *McVey v. Stacy*, 157 F.3d 271, 279 (4th Cir. 1998), *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 78–84 (9th Cir. 1997), *and Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997)); *Fedderman v. Palm Beach Cnty. Sch. Bd.*, No. 22-cv-81857, 2023 WL 11963656, at \*10 (S.D. Fla. July 10, 2023) (denying motion to dismiss because "the Court is 'unable to assess the weight of Defendants' side of the *Pickering* balancing test,' as whether the *Pickering* balance tilts *decidedly* in Plaintiff's favor is 'better-suited for summary judgment'") (quoting *Darlow v. City of Coral Springs*, No. 21-cv-6083, 2021 WL 3514826, at \*5 (S.D. Fla. Aug. 10, 2021), *aff'd*, No. 21-13020, 2022 WL 15345444 (11th Cir. Oct. 27, 2022)).

### C. Plaintiff suffered an adverse action.

Although the Village disputes whether some of the Challenged Actions amount to 'adverse employment actions', Motion at 13–15, that is not the appropriate question, since Plaintiff is not the Village's employee. The appropriate analysis is whether the Challenged Actions were "adverse action[s]" in response to protected speech that "would not have been taken absent the retaliatory

---

[3] The Village cites the same case in support of its argument that its interests outweigh Plaintiff's. Motion at 11 (citing *Brown v. Young*, 2025 WL 3171160, at \*4 (N.D. Fla. Nov. 13, 2025)). But critically, the *Brown* decision the Village cites is the denial of a *preliminary injunction*. 2025 WL 3171160, at \*4. The same court ruled against the employer's motion to dismiss. *Brown*, 812 F. Supp. 3d at 1222–23.

motive." *Wilson*, 595 U.S at 477 (quoting *Nieves*, 587 U.S. at 398); *see also Warren*, 631 F. Supp. 3d at 1195. In the Eleventh Circuit, an adverse action is one that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254; *accord Wilson*, 595 U.S. at 477 (quoting the "ordinary firmness" standard); *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281–82 (11th Cir. 2025) (applying the "ordinary firmness" standard in the context of retaliation against a public speaker for criticizing local officials at a public meeting). "The adverse effect 'need not be great in order to be actionable.'" *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1343 (S.D. Fla. 2014) (quoting *Bennett*, 423 F.3d at 1254).

Plaintiff no longer has the full range of rights and prerogatives that came with having been publicly elected. *Cf. Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544–46 (9th Cir. 2010). Plaintiff is removed from certain committees, is barred from serving as the Village's official representative to outside entities, and is prohibited "from issuing, presenting, sponsoring, or otherwise leading in the presentation of any award, proclamation, commendation, certificate, honoraria, or other ceremonial recognition on behalf of the Village of Palmetto Bay, whether at Village-hosted events or external events." Compl. ¶¶ 39–41, Ex. B at 3. These actions reduce his ability to effectively represent his constituents and would deter a person of ordinary firmness from exercising his free speech uninhibitedly—constituting ongoing violations of Plaintiff's First Amendment right to free speech.

This Court can remedy these violations through declaratory and injunctive relief. *See FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("[A]n ongoing violation of the First Amendment constitutes an irreparable injury."); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" justifying injunctive relief. (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976))). These injuries can also be redressed with nominal damages, which the Court can award even absent any ongoing harm. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292–93 (2021). Plaintiff alleges adverse actions taken because of his protected speech, those allegations must be viewed in his favor, and thus the Motion must be denied.

## II.     The Court should deny the Village's request for judicial notice of news articles.

The Village points to news articles about the controversy stirred up by Plaintiff's political

speech and asks the Court to take judicial notice of them. Motion at 8–9. At the motion-to-dismiss stage, "it is generally true that the scope of the review must be limited to the four corners of the complaint." *Speaker v. CDC*, 623 F.3d 1371, 1378 (11th Cir. 2010) (quotation omitted). The Village argues the Court can take judicial notice of these unauthenticated hearsay news articles (some of which are incomplete), citing cases that take judicial notice of "relevant public records," *Bouton v. Ocean Props., Ltd.*, 201 F. Supp. 3d 1341, 1345 (S.D. Fla. 2016), and discussing how courts can take judicial notices of news articles for limited purposes, *Osterback v. Scott*, No. 4:16-cv-105, 2016 WL 11475136, at *2 (N.D. Fla. July 25, 2016) (denying request to take judicial notice at motion-to-dismiss stage); *White v. City of Birmingham*, 96 F. Supp. 3d 1260, 1269 (N.D. Ala. 2015) (at summary-judgment stage, taking judicial notice that articles were published on certain dates, but denying request to take judicial notice as to their factual accuracy or characterizations about them). The news articles are not relevant public records, nor are they used for "for the limited purpose of noting statements within the article;" rather, the Village argues they are "further evidence that the Village experienced actual disruption in its operations that impeded its abilities to perform its duties efficiently." Motion at 9. That is inappropriate at this stage.

In any event, the Village does not explain how the existence of news articles would preclude Plaintiff's claims as a matter of law, so there is no need to consider those articles as part of the Motion.

## CONCLUSION

For the reasons stated above, the Court should deny the Village's motion to dismiss.

Respectfully submitted June 1, 2026,

*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Michelle M. Morton (FBN 81975)
Samantha J. Past (FBN 1054519)
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
mmorton@aclufl.org
spast@aclufl.org

8

cmcnamara@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiff*